Bonnie Blanche BRADFORD, Plaintiff in Error,

v.

L. J. BRADFORD, Defendant in Error.

No. 37924.

Supreme Court of Oklahoma.

March 25, 1958.

Rehearing Denied July 15, 1958.

Shutler, Shutler & Baker, Kingfisher, for plaintiff in error.

Murphy & Firestone, Kingfisher, for defendant in error.

PER CURIAM.

This action involves an order denying the natural mother of certain children whose parents are divorced the privilege of visitation requested by her in a motion to modify a pre-existing order concerning the custody of the children, who are a boy, age 15, and a girl, age 11

The mother and father of the children were married in 1940. In December, 1952, the father instituted an action for divorce which was granted him in March, 1953, by reason of the misconduct of the mother. Custody of the children was awarded the father upon stipulation of the parties, with the mother being given "the right to visit said children at reasonable times and at reasonable hours." In January, 1954, the father filed a motion to modify the decree by restricting and "completely" restraining the mother from visiting the children. The allegations of this motion were that the mother had come to visit the children in an intoxicated condition which they were old enough to observe and which upset them. This motion was not resisted by the mother, whereupon the court entered the following order in February, 1954:

> " * * * That the defendant is an *alcholic* and has visited said children *in a state of intoxication, and that she* is not a fit person to visit said children.
>
> "It Is Therefore, Ordered, Adjudged and Decreed that the said defendant, Bonnie Blanche Bradford, be and is hereby restrained, enjoined and excluded from visiting said minor children, * * * ."

In May, 1957, the mother filed this motion to modify the previous order to permit her to visit the children and have them visit her in her home which is located in another city from that of her former husband. From the order denying this motion, she has appealed.

The mother testified that since the order modifying the decree she has remarried and established a home; that her husband owns and operates two skating rinks; that she has been employed since 1955 as a secretary for a distinguished member of the bar of this state; that she does not now drink alcohol; that she does not desire to change the custody of the children; their religious affiliation or school, but merely wants to visit them at reasonable times. In support of her motion the mother also introduced the testimony of two witnesses

from her present home town; one, the court clerk; the other, the wife of the bank cashier and the sponsor of the youth group of a church, each of whom testified that the mother's reputation in that community since she had moved there was "good" or "very good."

Much of the testimony on behalf of the contestant deals with events which occurred prior to the father's motion to modify the original decree and relates to the mother's conduct which occasioned the divorce and with her subsequent marriage to her present husband which violates the religious tenets of the father and his family. The testimony concerning her use of alcohol prior to the modification order will be considered to determine if there has been a change of condition that would justify modification now. The testimony and opinions concerning her status as a married woman in the eyes of her church refers to a matter for the individual's conscience unaided but undenied by the authority of the state.

In opposition to the motion, the pastor of the children's church testified that he concluded that the mother was intoxicated, or had been drinking when she telephoned him long-distance in May, 1955. The petitioner's adult daughter by a former marriage testified by deposition that in the fall of 1956, after a football game, her mother came to her home in Stillwater in an intoxicated condition. She also stated that her mother shouldn't have the children, but we note that the daughter was willing to ask her mother to keep her own baby, which petitioner did in her own home in another city "for almost two weeks" at about the same time. The adult son of petitioner by the previous marriage testified that he had observed his mother intoxicated at his home in El Reno on one occasion in December of 1954 or 1955. He was not positive about the date, and the petitioner in rebuttal testified the occasion was December 21, 1953, prior to the order which she now seeks to modify. This witness had not seen his mother since that date. The father of the children testified

he saw his former wife intoxicated on two occasions in 1954, but he was not certain of the exact date. He had not seen petitioner since 1954. He also testified that his sole objection to visits by the mother was that her marital status was contrary to the laws of his church, which condition he did not believe she could explain to the children. Finally, for the same reason, he has returned unopened letters written by petitioner to her children.

■ It is conceded by all that the primary consideration in a matter of this nature is to serve the best interests of the children. For this purpose, based upon our consideration of all the evidence, much of which it is unnecessary to relate, we do not believe that there should be any change of custody of these children at the present time, and to this extent the order of the court denying the motion to modify is correct. At the same time, we are of the opinion that sufficient change of condition has been established to authorize reasonable visitation and associational rights to the mother. We reach this conclusion notwithstanding our great respect for the opinion of the learned trial judge.

■ In addition to the paramount consideration to be given to serving the best interests of children innocently involved in these unfortunate situations, the courts must also give due consideration to the "natural and inherent rights" of parents. Gilcrease v. Gilcrease, 176 Okl. 237, 54 P.2d 1056. Alford v. Thomas, Okl., 316 P.2d 188. On the particular problem at hand we have been cited no case from this jurisdiction in which the total deprivation of visitation rights has been approved where such rights were denied the mother. This is not to say that such a circumstance could not exist. However, it is only in exceptional cases that a parent should be denied the right to visit his or her minor children after their custody has been awarded to the other parent in a divorce proceeding. Bussey v. Bussey, 148 Okl. 10, 296 P. 401; Clark v. Clark, 177 Okl. 542, 61 P.2d 28. The corollary of that pro-

position is that where visitation has once been properly denied, the court should not be unduly cautious in the restoration of that right upon a showing of an actual change of condition. In the instant action the change of condition was established even in view of the few isolated instances of intoxication. Certainly the petitioner is no longer an "alcoholic," which was the basis of the original modification order, or else her reputation for sobriety in her present home town, a small county seat community, would not be "very good." The petitioner has commenced to build a new and better life. In this she should be encouraged by the court so long as the children will not be harmed thereby.

The judgment of the trial court is reversed and the case is remanded with directions to grant the mother reasonable visitation and association rights with her children.

The Court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative opinion was written by the Commission, the cause was assigned to a Justice of this Court, and thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.